Robert Sullivan v. Plaintiff The error in the district court is a fundamental misunderstanding of this court's precedent. It's a misunderstanding that's evident in the defendant's briefs and appears to be adopted by the district court. And that is, it's summed up sort of in one statement in the opinion by the district court, where the court says, these pictures and videos, however, do not answer the question of whether the officer's actions were objectively reasonable from the perspective of those on the ground. What the court essentially has done in its opinion, although there's not a lengthy treatment of it, and what the defendants are arguing is they state the standard correctly, that it's objective reasonableness standard. The officer's use of force is viewed from the perspective of an objectively reasonable officer on the scene. They then support that argument with subjective beliefs of all the officers on the scene. And that's evidence in their statements of uncontroverted fact, where the facts that they most rely on, and facts that are also cited by the district court, are that the officers believed that Mr. al-Hakim was pointing the gun. This court, in several different cases, Nance v. Sammis, Locke v. City of Litchfield, have repeatedly said that that doesn't matter. In fact, it's irrelevant, and that's in Supreme Court precedent as well. In Nance v. Sammis, this court said the key question is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intent or motivation. Essentially, it doesn't matter what... And that's an issue of law, right? It is, Your Honor. It is, Your Honor, because I believe that the grant of qualified immunity by the district court essentially is based on subjective belief. The district court discusses uncontroverted facts and, in fact, makes a statement that the plaintiff has not controverted any of the facts, including the facts that the officers believed that they were justified in the use of force. Well, I submit that, according to the precedent of this court and the Supreme Court, that that doesn't matter. It literally is irrelevant whether or not, in this analysis, whether or not the officer believed that it was a threat or not. So you're saying, on this issue, the non-moving party can fight something with nothing? Well, no, Your Honor. I think there is other evidence. Then, you know, I thought, well, all right, but... I think there is other evidence. For example, there is a pellet gun that doesn't have an orange tip. It looks like it could reasonably be a real gun. There's no dispute that he was, in fact, holding it. There's no dispute of what the police are saying. So those objective facts, I think that those could be controverted. But, in essence, I guess I do agree with you, Your Honor, that without controverting any fact, the court still has to objectively look or take the view of an objectively reasonable officer and say, given all of that, was the use of force reasonable, objectively reasonable? So I guess I think you are right, Your Honor. I don't think that anything would have to be controverted. Now, perhaps if there was a... It would have to be preposterous, though. I mean, what strikes me here is that seven different officers fight. Seven different officers, without communicating with each other, concluded that the events before them justified the use of deadly force. Now, that's of significance, isn't it? This isn't one officer with no other witnesses anywhere to be found who says, well, I believe... In a case like Morgan, the young man turned. I thought he was reaching for a gun, and I shot him. That was all there was. We affirmed the grant of summary judgment. And here, seven officers saw the facts. I mean, you can say there were 18 there and 11 didn't fire, and the district court said, well, Jones had put his gun down because he was trying to reason with the young man and so forth and so on. But seven officers with some level of training on the use of force thought it was justified. Now, isn't that pretty potent? I would submit, Your Honor, that that's not significant at all. Not at all? Not at all, because it's not a... Their subjective belief or their belief that they were justified in firing isn't a fact. When we talk about objective reasonableness, we have to view the facts from an objective viewpoint of a reasonable officer on the scene, whether or not they believe it. In fact, I would say that there could be a case where an officer does not believe that there's an immediate threat. But in viewing the facts, they are, in fact, from an objective standpoint, is a serious threat. And in that case, despite the officer's subjective belief that there wasn't, I think that excessive force could be justified. Do you need the video for your position? In other words, what if you did not have the video? And I understand the district court's assessment of it. But if you did not have that, is your argument different? No. Well, Your Honor, I don't think that we can succeed without the video, frankly, because it's a situation where everybody on the scene is law enforcement. So everyone eyewitness to the event is law enforcement, and most of them interested parties. The only thing, essentially the only thing that's objective in the entire case is the videotape. So without the video, I think it's a very difficult case to make because we have the other evidence that we're left with, even if we discard the testimony, is a man in the woods. He's got some type of weapon that may appear to be a handgun, and he's not putting it down when asked. So I don't know how, without the videotape, to give us an objective viewing that you actually succeed. The defendants have not cited a single case, and I was unable to find a single case, where a federal court said that a videotape of an event was 20-20 hindsight. I think that's a misguided interpretation of the law by the district court. A videotape of an event is not a look back at it. It's a viewing of the event as it actually happens. It's like being there. It's not like Monday morning quarterbacking and going back and talking about something that already happened. It's a present impression that's recorded by the most objective possible source that you can have. And in this case, if you leave that aside, then there's virtually no evidence to controvert anything that the defendants say. I think the central issues are, did he point the gun at the defendants because the facts are that none of the defendants said that they had a reasonable belief that he was an immediate threat, that they thought that they could use excessive force until that moment, until that moment. So if we view that moment, the question, I think, and the problem with disregarding the videotape on the part of the district court, is that could a trier of fact have a reasonable belief against the question of law? Correct. Correct. And given... Always will be. Right. It's not going to a jury. Right. Exactly, Your Honor. But looking at the videotape, is it a reasonable interpretation or can a reasonable inference be drawn, to which we're entitled to all the reasonable inferences, and we're entitled to the evidence viewed in the light most favorable to us, at that moment when you see him getting up off the ground and we showed some freeze-frame sort of video, when his arms are like this, is it a reasonable inference to be drawn from that that the man is surrendering? Now, it may not be the only thing. Another interpretation may be that on his way up there, he was pointing the gun at someone. But is it a completely unreasonable interpretation when viewing that videotape and the circumstances that happened before that, leading up to that, that when you see the man the moment before he shot like this, can a reasonable inference be drawn that he's surrendering? It was pretty hard to distinguish it from Morgan. Excuse me, Your Honor? It was pretty hard to distinguish. When you concede, it may not be the only interpretation. That's exactly what the officer faced in Morgan. And exactly... Was he lunging at me with a knife or was he doing something else? But it's also exactly the circumstance, essentially, in Nance v. Sammis, where Nance, the officers had one interpretation, the only other... one story, I'll say. The only other story that opposed that was that of the interested suspect on the ground, and that was enough for this court to say, there's two stories, no summary judgment. It's a fairly simple issue. If there's two stories and they're at least... there's some rational interpretation or some rational person can conclude either way, well, that's the definition of a situation that is not appropriate for summary judgment. I have just a quick question about how you pled this case. It looks like the Section 1983 claims are only in the official capacity. Now, I notice the district court sort of glossed over that and got into the qualified immunity matter, but what's your position on that? I think there's some confusion there, for sure, and perhaps it's not completely clearly pled, but I do think, and I think that we addressed this... perhaps did not address this in our appellate briefs, but we did it in the district court briefing, that we believe that the language, if anything, maybe is inconclusive in the pleadings, but that it's pled against both personal and official. All right, so essentially, I don't think that there is any precedent, or there is no precedent, at least for ignoring the video. The district court either disregarded it or gave it very little weight, which was in error. Also, there appears to be a fundamental analysis, misinterpretation of precedent by looking and talking almost exclusively in the briefing and the court's opinion about subjective intent, which is irrelevant. It doesn't matter, and this court's precedent states that very clearly. All right, thank you. Thank you. Mr. Cox? Please, the court. Video evidence does not create a dispute of fact. It resolves one. Here, the summary judgment record is clear and establishes the facts that mandate the application of qualified immunity. Well, in this case, wouldn't there, isn't it reasonable to say that this particular video may have created a fact? I mean, the district court said, well, it's from a different vantage point. We're looking at it later, but isn't that why it raises an issue of fact? I disagree. The material facts that establish the application of qualified immunity are as following. The decedent, Mr. Al-Akim, was in an armed standoff with the police officers. He waved the gun in their direction. They told him 12 separate times to drop the weapon. He refused and shook his head in refusal. Now, wait. Are you talking about this case? Yes. You just said wave the gun in their direction? Yes. Well, what supports that? The video and the testimony of the officers. Are you talking just when he's getting up from having fallen down or before that? Before that, Your Honor. At time stamp 118 on the video. You mean when Jones said don't do that again? Yes. Any other time? No. Apart from the time that preceded the shots being fired. I thought he was pointing it at his neck for most of the time. That's correct, Your Honor. For most of the time, he was pointing at his neck. At one point, he pointed it in the general direction of the other officers. Jones said don't do that again. More commands to drop the weapon. Drop the weapon. Drop the weapon. And he didn't do it again except he fell down, right? He did fall down, and then when he got back up, he raised the gun in a shooting position, and the officers fired. But it's not waving constantly. Counsel said, and it was my understanding of the facts from the brief, that the officers did not see the need for force until his actions in getting up from having fallen. Well, subjectively speaking, they didn't fire, so obviously they did not perceive the need to do that. But objectively speaking, they could... What's your position as to when they could have killed him? When he waved the gun the first time. Objectively speaking, he had been told at that point to drop the weapon several times. He shook his head no, and when he waved the gun that first time, objectively speaking, the officers could have fired at that point. Subjectively, they didn't do so for various reasons. They waited, and the situation escalated. And that's on the video the first time? Pardon? The waving the first time is on the video? Timestamp 118. So, to answer your question, does the video create a dispute effect? No, because those are the facts we need. The facts we need are that he was armed, that he was told 12 different times to drop the weapon, that he refused, and that he waved the gun in front of the officers. The video confirms those facts. It doesn't dispel them. So if this case went to trial, would you seek to exclude evidence of the video? No. You would want the video in? Absolutely. The video confirms the testimony of the officers. So going to the question of subjective intent, I agree with counsel that subjective intent is irrelevant. The problem with that is his entire argument is based on the subjective intent of Mr. Al-Akhim. He keeps saying in the briefing here that he was surrendering. Well, that is a question of his subjective intent. The facts are that he turned with a gun in his hand and pointed it in the direction of the officers. Those are the facts. Arguments about those facts include whether he was intending to fire or whether he was intending to surrender. Those are arguments. Those aren't facts. The officers are entitled to their reasonable perceptions so long as they are objectively reasonable. We're not saying that they can say, well, I subjectively believe that he was firing, and that ends the case. But we cannot get to the objective inquiry without knowing what it is they saw. They saw him with the gun. They saw him turn. They saw him raise it. Those are the facts, and the law is clear that qualified immunity applies to those circumstances. And I want to talk a moment about the Scott v. Harris case, which the plaintiff relies heavily on. That case established the exact opposite of what the plaintiff is arguing here. That case says, look, if we have a video evidence, we don't view it in the light favorable to either party. We just view the evidence. The appellant here wants to say, well, let's view the evidence, the video in a light most favorable to the plaintiff. That's not what Scott says. Scott says we just view the video in a neutral fashion. In Scott, though, there wasn't a dispute as to the vantage point of the video, right? So here we have a video that's from above, which is not the view of the officers, correct? Which actually takes it, agreed, but it takes it one step away from reliability because what's relevant is their perceptions on the ground. And so if anything, the video in Scott would be more probative rather than less so because what happened, what was perceived by the helicopter pilot, for example, is not a relevant inquiry with respect to the qualified immunity analysis. So you don't want the video in at trial? No, I do. I think it confirms what our officers testified to. One other point about surrender that he makes. There's no such thing as an armed surrender. If you turn with a gun in your hands, then you are not surrendering. End of story. There can be no I have my gun raised up here or down here. It doesn't matter. If you've got a gun in your hand pointed at you. I don't think military history would support that argument. Well, I don't. I think the qualified immunity analysis would, though. I think soldiers have done that for centuries. Well, in this case, the plaintiff would have to establish, and I'm quoting from Thompson here, to defeat a motion for summary judgment, the plaintiff needs to present enough evidence to permit a reasonable jury to conclude that an officer's use of deadly force was objectively unreasonable. So he would have to show here that when Officer McLaughlin and the other officers fired, they were objectively unreasonable in perceiving that to be a firing motion. That's not established here. What do you think about the way this was pled? Do you think that the Section 1983 claims were properly pled in their individual capacities? No, I think that in order to succeed under 1983, you need to name the individual in an individual capacity. But you don't raise that on appeal here. Well, this court can affirm from any reason. The appellant is the one who's raising things here at the court. So if the court decides that that is relevant and wants to affirm on that basis, it can. I prefer the merits argument because I think it's clear-cut and it's more beneficial to us. So do you feel you had notice? I mean, what's your position on it? My position is that in order to successfully maintain a 1983 claim, you would have to name the individual in his individual capacity as opposed to his official capacity. And my question is, in this particular case, do you feel like it was properly pled and that you had notice? That we had notice that they were seeking going to name them in their official capacity? I mean, I think that I would have figured that out, yes. However, I don't think that it's properly pled. Strictly as a matter of pleading, I don't think it's properly pled at this time. If there are no further questions, I'll yield the rest of my time. Mr. Heigl? May it please the Court. Sergeant Trevor Ballard, Matthew Westrick, Chief Greg Mills, and the Riverside Police Department are entitled to judgment, as Judge Case found, simply because Officers Westrick and Ballard did their jobs when faced with a threat of bodily harm or death. Ballard and Westrick didn't violate, as a matter of law, Mr. Al-Hakim's constitutional rights at the moment that he pointed the gun at them. They were automatically justified to use their service weapons and fire at him. They're also immune, and the Court has asked poignant questions. And I think that it is not amiss to recast this Court's verbiage in the Molina v. Gomez case, or the Molina-Gomez case. The reasonableness of an officer's use of force must be examined from the perspective of the facts known to the officers at the time of the incident. Plaintiff's counsel states that, well, we can't take into account the subjective beliefs and subjective views of the officers, but that's the only view of the facts that we have, that's all that we can have, are the view of the facts at the scene. And once those officers, all of the officers that fired their weapons, and those that did not, that weren't in a position to fire their weapons, they all believed, they all saw, the threat of bodily harm or death when Al-Hakim pointed his gun at the officers on the ridge. This whole as-if-to-surrender argument is nothing more than legal fantasy. If you look at the videotape, that they so desperately want the Court to ignore everything else and look at this videotape, which Judge Kays did view the videotape. He did look at the videotape. He considered the videotape in a light most favorable to Mr. Hakim or his family. But when you look at the videotape, it is not from the perspective, Judge Kays, not from the perspective of the officers, Judge Kays didn't misconstrue the law by saying, I can't go by 20-20 hindsight. That's the law. But also he was very specific in saying, this is from the vantage point, the bird's-eye view of the helicopter, of the pilot that shot the video. Not from the video, or not from the people on the ground, not from the officers that had the gun pointed at them, that every single officer at the scene says, he pointed that gun at me or my fellow officers and I felt an immediate threat of bodily harm or death to those officers and that's why I fired. That's official immunity and that is why summary judgment was eminently appropriate in this case. It's the same. It's the exact same plaintiff's argument that you can't consider the subjective belief I think is a misnomer because in Locke versus Litchfield, in Estate versus Morgan, and in Molina Gomez, the evidence comes from the officers, what they saw at the time, what the facts were from their perspective when they were on the ground faced with an imminent threat. And they acted, they fired their weapons, and unfortunately somebody died. But that is the nature of objective reasonableness. It's the nature why the law protects the police officers in this case because they do a job to serve and protect and that's exactly what they did in this case. Going from their perspective of the officers, which this court must view all of the facts, even if you view... Judge Case viewed all of the facts, the testimony, the videotape, everything, in the light most favorable to Mr. Hakeem and still found objective reasonableness in their actions. There are certain facts that are totally uncontroverted and let me backtrack. One thing that plaintiff will never bring up, and we raised it in our briefs, and the audio tape, which is from the perspective of the officers, which is uncontroverted, which is, it tells volumes. Judge Kelly asked if we would like to play the videotape at trial. I don't know if we've made that decision yet. I hope that we never will. But the audio tape of this encounter speaks volumes. They beg and they plead. Please put down the gun. You don't want to do this. We are here to help. Riverside's here to help. Oh, no, no, don't do that again. That's what, when he pointed at him the first time, and Judge Loken, you hit upon one of the issues in the case. At that point, they are justified in firing their weapons. Any time they perceive a threat of bodily harm or death. That is true. But also, as Judge Lowery, in the Estate of Morgan case that was underlying this court's decision affirming her summary judgment, she went through the litany of Missouri law that says the decision to fire your weapon is the quintessential act of, I'm losing the word, that's their choice. It's the ultimate choice that a cop, that an officer has to make. And they should be protected under official immunity under state law for that choice. Discretionary act. I'm sorry, discretion, sir. So, the court can't dislodge itself or not bring itself not to view all of the evidence, all of the facts, from the perspective of the officers on the ground. It's not a mystery, Cass, that there are other reasons for judgment as well that weren't covered or weren't addressed in the appellant's brief, being the city of Riverside and the city of Kansas City itself are also entitled to summary judgment in this regard because their policies and procedures are facially valid constitutionally. So, therefore, you have to look at it and... I lost my train. I'm sorry. That's in your brief. It is in the brief. And in that regard... It's unlikely we would reach that in the first instance. Okay. And I would ask the court to look at the brief and take the briefs under advisement, as I know they would, in case I miss an argument that isn't addressed here in my oral argument. Bottom line... That we do routinely. Bottom line, Officer Ballard, Sergeant Ballard, Officer Westrick, Chief Mills, the city of Riverside are absolutely entitled to judgment because objectively reasonable facts based upon the perspective of the officers on the ground demand qualified immunity and under state law demand official immunity because they are authorized to use deadly force when they reasonably believe that their lives or the fellow officers' lives are in danger. Thank you. Thank you, Mr. Sullivan. I think it was three minutes. Yep. It's absurd that the Board of Police Commissioners would want to put the videotape in evidence at trial to show what happened, but yet they oppose the video as 20-20 hindsight or not appropriate to be viewed in summary judgment. That's an absurd notion. I frankly didn't believe that the court's question would be answered like that. It also seemed that what the Board of Police Commissioners' counsel is saying is that, well, this is what he did say. Mr. Al-Akhim was armed. He was told to put a gun down multiple times. He waved the gun in the direction of officers. That's all they needed to shoot him. And it sounded like it didn't matter whether it was right when he waved the gun. Once those things happened, and then later we had a different incident, it's okay. That's clearly not the law. No, I don't think that's what he's arguing. I think he's arguing that if the case had ended with shooting, it would have been right then. Right then, okay. It should have been the same result. I wanted to address your question about Estate of Morgan because I took a quick look at it, and I think that there is a difference between the Estate of Morgan and this case. In the Estate of Morgan case, I think what it turns more on, or the analysis that's turned more on, is a difference in an interpretation of facts that are considered. There's one set of facts that maybe suggest that he's not a threat. There's another set of facts that suggest perhaps he is a threat. And there's not really an argument as to the facts of what happened, but it's an interpretation. The officer's interpretation is that it's a threat. Can someone else have a reasonable interpretation? But it's not looking at facts. I think the difference about this case is that it's not, at least in my argument, it's not an interpretation of what this means. I thought that's what it was. That, it seems to me, makes it Morgan. Well, here's the thing, Your Honor. The officer's version of the facts is that the gun was pointed at them and they shot him. The videotape's version of the facts, at least one inference that can be drawn from it, but just the pure facts. Forget about even interpreting. They say he's like this when they shoot him. The videotape has him like this. Those are just facts. I thought the whole thing was that there were officers above him on the hill. And therefore, when the gun is up here... No, Your Honor. It's a very steep ravine. There wasn't anything like this. Where did that come from? There's officers on his level, some of whom shot. There's officers up on the ravine, which is not at the ceiling here. It's more of an... The facts of this isn't in the brief, but it's more of maybe a 45-degree angle. So this is not pointed up at the ravine. This might be pointed at the ravine. And I think the difference with Morgan is there's not... It's a factual question. When he was shot, were his hands like this? Or were they pointed at officers? And I think that's the difference, Your Honor, in why the video tape has to be considered. I have one more question. You're out of time, but this is a quick one. Yes, Your Honor. Do we have to separately consider Officer McLaughlin vis-a-vis the Riverside police officers? I understand why Kansas City and Riverside would raise different issues if we get to the policy and training questions. But on this question that we've been debating this morning, aren't all the police officers in the same position? Or if not, why would... I mean, there's some stuff about McLaughlin being trained in special forces and so forth, but it doesn't really affect the analysis, does it? I don't think that's any more relevant than the background of our... in this analysis, than the background of the man who was shot, frankly. And I think they should be dealt with on the same level. For later, perhaps differently, but at this stage, I agree, Your Honor. Thank you very much. Thank you, counsel. The case was well-briefed in our group, and we'll take it under advisement.